## CHAMBERLAIN *vs.* HILTON.

[ACTION FOR COMPENSATION FOR PART PERFORMANCE OF A CONTRACT.]

1. *Contract; validity of, on demurrer.*—The contract as set out in the complaint between H. and F. H. C. & Co., does not show on its face, that it was made either to violate the laws and policy of the country, or for an illegal consideration, consequently there was no error in overruling a demurrer to the complaint, those being the grounds of demurrer assigned. (Same point decided in *Patton (Governor) v. Gilmer,* 41 Ala. 176.)

2. *Same; part performance of.*—Where a party to a contract performs services which he is bound by it to perform, and the contract is abandoned, or rescinded, by the consent of the parties to it, before the entire services stipulated to be performed are completed, and the contract fixes the compensation for the entire services to be performed, the party may recover a proportional part of the compensation, in the absence of any agreement to the contrary, or any damage which the other party is entitled to *recoup.*

3. *Evidence; rate of exchange between Mobile and Liverpool.*—Where by the contract H., a British subject, was to receive certain cotton as his own, and to ship the same "to Liverpool, when opportunity affords," to a house there, and for the *trouble and protection* given to said cotton, he was "to receive two cents, or one penny sterling, per pound, from the nett proceeds of the sale of the cotton"; and said contract was afterwards rescinded by consent, it was competent for H., in a suit for compensation for part performance of the contract, to prove the rate of exchange between Mobile and Liverpool, in order to aid the jury in fixing the amount of compensation he was entitled to receive, in the event they were enabled, from the evidence, to determine what proportion of the whole service called for by the contract had been performed.

4. *Damages; excessive or oppressive, no ground of reversal.*—This court has no authority by law to reverse a judgment because the verdict is excessive or oppressive.

APPEAL from the Circuit Court of Mobile.

Tried before Hon. C. W. RAPIER.

THIS action was brought by the appellee, who was a British subject, against the appellant, as a copartner in the late firm of F. H. Chamberlain & Co., to recover compensation

for services performed by appellee, in protecting certain cotton belonging to the said firm, and was commenced on 27th March, 1866. The complaint contained two counts, the first for work and labor, and the second as follows: "Plaintiff claims, also, the further sum of three thousand dollars for this, to-wit: that in the year 1863, the plaintiff was a subject of the Queen of Great Britain, sojourning and transacting business in the State of Alabama, a State which was then and afterwards one of the so-called Confederate States of America, and at war with the government of the United States of America; and the said F. H. Chamberlain & Co., of said State of Alabama, were the owners of three hundred and fourteen other bales of cotton, of great value, to-wit, of the value of sixty thousand dollars, and being desirous to avail themselves of the services of the plaintiff, for the preservation and securing of the said property to their use, transferred the same to the plaintiff, and entered into an agreement with him of the effect following, namely:

"MOBILE, July 30, 1863.

Received of F. H. Chamberlain & Co., three hundred and fourteen bales of cotton, two hundred and sixty-four bales of which are stored in Mobile, and fifty bales of which are stored on the plantation of R. H. Adams, Marengo county. The above cotton is to be shipped by me to Liverpool, when opportunity affords, to the house of Thos. Hilton, Son & Co., or to J. D. Malcomson. For my trouble and protection I give to the cotton, I am to receive two cents, or one penny sterling, per pound, from the nett proceeds of the sale of the cotton. The above cotton has been placed in my name, but virtually, and to all intents and purposes, belongs to F. H. Chamberlain & Co."

(Signed) FRED. J. HILTON,

F. H. CHAMBERLAIN & Co.

The aforesaid Liverpool, was Liverpool in England; and the coasts and ports of Alabama, and of said so-called Confederate States, and the borders thereof, were in a state of blockade, and after said cotton had remained in the name of the plaintiff, and he had kept the same, or a

Chamberlain v. Hilton.

large portion thereof, to-wit, 212 bales, according to said agreement, under his care and charge, and at his responsibility, for a long space of time, to-wit, two years, without his having had an opportunity to ship the same, safely to Liverpool, the defendant requested the plaintiff, to-wit, on the — day of ——, in the year 1865, to re-transfer said cotton to said F. H. Chamberlain & Co., and promised plaintiff to satisfy him for his services in the premises, according to said agreement; and plaintiff did accordingly, in compliance with said request, and relying on the promise aforesaid to satisfy him, re-transfer and deliver (to-wit, then and there) the said cotton to the said F. H. Chamberlain & Co., who received the same.  By means of all which, defendant became liable to pay to plaintiff so much money as he reasonably deserved to have according to said agreement, and in part performance thereof for his services, care, and responsibility, and protection aforesaid; and plaintiff reasonably deserved to have therefor, the sum of three thousand dollars; yet neither the said defendant nor said F. H. Chamberlain & Co., nor any of them, have or had paid said money or any part thereof, but so do have wholly refused, wherefore," &c.

The defendant took issue on the first count, but demurred to the second, and assigned the following grounds of demurrer : 1st. That the alleged agreement in said complaint mentioned is void, being made to violate the laws and public policy of the country; 2d. That the alleged promise in said complaint mentioned, was made upon an illegal consideration and is void , 3d. That the said alleged promise in said complaint mentioned was supported by no consideration, so far as the same appears from the complaint."

The court overruled the demurrer, and on the 27th May, 1867, the plaintiff recovered judgment against the defendant for three thousand dollars damages and costs.  On the trial, as the bill of exceptions states, "The plaintiff's counsel asked him, (plaintiff being a witness for himself,) what was the rate in Mobile of sterling exchange on Liverpool at the time he made his demand to which question defendant, by counsel, objected, but the court overruled his objection, and allowed the question to be asked, and

defendant excepted. The witness then stated the rate of exchange to be 50 per cent. premium at Mobile; to which answer defendant objected, and the court overruled the objection, and defendant excepted. The witness further testified that the value of a pound sterling, in dollars and cents, was $4.44-100."

The court, amongst other things, charged the jury, that "if pursuant to the agreement between the parties, the services agreed upon were in part performed by the plaintiff, and the contract was then rescinded by mutual consent, or terminated by the act of the defendant, without fault on the part of the plaintiff, the plaintiff would be entitled to recover as much as the services performed were worth; and if the jury could determine, from the evidence, what proportion of the whole service had been performed by the plaintiff, then they might estimate its value in accordance with the price agreed upon between the parties for the whole service. The court further said to the jury, by way of illustration: If A. entered into an agreement with B. to build a house for the latter, for a stipulated price, and if, when four-fifths of the work was done by A., pursuant to the contract, the contract was rescinded, or terminated by the act of B. without any fault on the part of A., then A. would be entitled to four-fifths of the price agreed upon for the whole work." The court, at the request of the plaintiff, further charged, that "the jury, in estimating the value of plaintiff's services, if they believed from the evidence that there had been a part performance of the contract, and the defendant waived the further performance of it by the plaintiff, might look to the price agreed on in the original contract," and added, "that the jury, if they were enabled, from the evidence, to determine what proportion of the whole service, called for by the contract, had been performed by plaintiff, might allow him such compensation for such part of the contract as he had performed, as that bore to the whole price agreed on in the contract." To which charges the defendant excepted and appealed to this court, and assigned as error, the overruling of the demurrer to the second count, the admission of the evidence excepted to, and the charges given.

R. H. SMITH, for appellant.—1. The demurrer to the second count of the declaration should have been sustained. The count shows an agreement to violate the laws of the United States ; 1st. In protecting the cotton against any seizure or claims of the government by having it colorably in the name of a British subject ; 2d. It was an agreement for the purpose of covering it with the name of a British subject, if opportunity should offer to run it through the blockade ; 3d. There was no consideration for the promise. 3 Wallace, U. S. 514 ; *ib.* 337.

2. The charge given at the request of the appellee, and the addition made to it by the court, put the case on an impracticable basis. It invited the jury to consider it in the light in which the evidence adduced shows it could not be solved. The court applied the doctrine looking to a contract which has been in part performed and *never abandoned*, to a contract which *was rescinded*, and this was error. When a contract has been rescinded by consent, or by either party, for cause, the contract *is destroyed.*—2 Parson's on Cont. 190, 191, 192 ; *ib.* 30–36 ; *ib.* 170, 171 ; 26 Ala. 486 ; *Dermot v. Jones*, 23 Howard, 233–234.

3. The evidence, all of which applicable to the exceptions, is in the record, shows that the *exchange* on England could not have entered into the compensation, and thus shows, not only that the evidence objected to ought not to have been allowed, but that the contract could furnish no rule as to the amount of plaintiff's compensation. Both the allowance of the evidence and the charge of the court sent the jury on a false inquiry. The contract was not divisible.—See authorities, *supra.*

MANNING & WALKER, *contra.*—1. It must clearly appear that the contract was made in violation of the laws and policy of the United States. If it is not necessarily illegal ; if in one view or mode of operation it would be legal and in another not, it must be construed to be legal.—1 Chitty on Cont. 571–2 ; *Lewis v. Davidson*, 4 Mees. & W. 654–9 ; *De Vallengin v. Duffy*, 14 Peters Rep. 282.

2. This is clearly a case in which the contract should be

7

"looked to," in estimating the compensation for a part performance.—Sedgw. on Meas. of Dam. 220 *et seq ; Hutchinson v.' Cullum,* 23 Ark. 632 ; *Pickard v. Bates,* 38 Ill. 40, 44.

3. In the contract is an alternative stipulation, that for his trouble, and the protection he should give to the cotton, Hilton should receive [retain?] two cents *or* one penny sterling per pound. If these rates were not exactly equivalent, there was an option in respect to them, in one or the other of the parties, and for the purposes of this argument, it does not matter which.—Addison on Cont. 1125, 6 ; 1 Dougl. R. 96, (*Layton v. Pierce.*)

BYRD, J.—1. The court did not err in overruling the demurrer.—*Vide authorities cited on brief of counsel for appellee.—Patton ( Gov'r) vs. Gilmer et als.,* — Ala. R. 176.

2. Where a party to a contract performs services which he is bound by it to perform, and the contract is abandoned or rescinded by the consent of the parties to it before the entire services stipulated, and the contract fixes the compensation for the entire services to be performed, the party may recover a proportional part of the compensation—that is, if he has performed three-sevenths of the services contracted to be performed, he is entitled to three-sevenths of the entire compensation in the absence of any agreement to the contrary, or any damages which the other party is entitled to have *recouped.* The mere rescision of the contract does not defeat the right of the party who has performed services under it, from recovering a proportional part of the compensation stipulated by the contract for the entire services. Both parties have the right to stand upon the stipulation of the contract as to compensation to the extent of the services performed under it, unless a new contract is made which affects the rate or measure of compensation. We can perceive no error in the charges of the court excepted to by appellant.—*Vide authorities cited on brief of counsel.*

3. As the appellee was entitled to recover a proportional part of the compensation stipulated to be paid for the entire services to be rendered by him ; and as the cotton was to be shipped by appellee to Liverpool to be sold, and for

his trouble and protection he was "to receive two cents or one penny sterling, per pound, from the nett proceeds of the sale of the cotton," it was competent for the appellee to prove the rate of exchange between Mobile and Liverpool, in order to aid the jury in fixing the amount he was entitled to receive in the event "they were enabled from the evidence to determine what proportion of the whole service called for by the contract had been performed," in order to "allow him such compensation for such part of the contract as he had performed, as that part bore to the whole price agreed on in the contract." For if they adopted this rule, which they had the right to do ; and as the compensation was payable out of the nett proceeds of the sale, and appellee, by the contract, if it had been carried out, would have had possession of the cotton, and the right to the possession of the proceeds of sale in Liverpool, he would have been entitled to the two cents or penny sterling per pound at the place of sale, and the jury would therefore be authorized to consider the exchange between English currency and American, in estimating the damages to which the appellee was entitled. In this view alone was the evidence objected to admissible. All the evidence introduced on the trial is not set out, and although the damages ascertained by the verdict of the jury seem to us much larger than the evidence which is set out authorized, yet this is not a question for this court to consider, but for the court below on a motion for a new trial. We have no authority by law to reverse a judgmeent because the verdict is excessive or oppressive.

The judgment must be affirmed.